**Mwati Pepi McKENZIE, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C8–97–1745.

Supreme Court of Minnesota.

Aug. 6, 1998.

---

Keith Ellison, Legal Rights Center, Minneapolis, Robin K. Magee, Hamline University School of Law, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Michael O. Freeman, Hennepin County Atty. by Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

TOMLJANOVICH, Justice.

This case comes to us on appeal from the denial of appellant Mwati Pepi McKenzie's petition for postconviction relief and request for a hearing. McKenzie alleges that a group of Hennepin County judges met and decided to impanel anonymous juries in his and his codefendants' trials, thereby violating his rights under the Due Process and Confrontation Clauses as well as a canon of judicial conduct. We hold that the postconviction court did not abuse its discretion in denying McKenzie's petition and his request for a hearing.

A court may dismiss a petition for postconviction relief without conducting an evidentiary hearing if the files, records, and affidavits "conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (1996). On review of a postconviction proceeding, we determine only whether sufficient evidence supports the postconviction court's findings; we will not disturb the lower court's decision absent an abuse of discretion. *See Hodgson v. State,* 540 N.W.2d 515, 517 (Minn.1995).

We have already recounted the facts of this case in McKenzie's direct appeal. *See State v. McKenzie,* 532 N.W.2d 210 (Minn.), *cert. denied,* 516 U.S. 926, 116 S.Ct. 327, 133 L.Ed.2d 227 (1995). McKenzie was one of several individuals tried for murdering Minneapolis police office Jerry Haaf. *See id.* at 213 n. 2. A jury convicted McKenzie of first-degree murder of a peace officer, and he was sentenced to life in prison. *See id.* at 213. We affirmed his conviction on direct appeal.

McKenzie filed a petition for postconviction relief, in which he asserted, *inter alia,* that the trial judge made the decision to impanel an anonymous jury at a meeting of several Hennepin County judges, without McKen-

zie's knowledge or participation.[1] McKenzie quoted a November 1994 newspaper article about Hennepin County Judge Deborah Hedlund, who presided over the trial of one of McKenzie's codefendants. *See generally* Britt Robson, *Polyanna with a Gavel,* City Pages, Nov. 2, 1994, at 10. The article reported, in relevant part:

> Before the Ford, Bowles, and McKenzie cases reached trial, Chief Judge Kevin Burke summoned Hedlund and the other judges involved in the Haaf trials to get together. According to Hedlund, they decided—before any arguments from the defense attorneys could be registered—that the murder could possibly involve a criminal conspiracy of so great a magnitude that the jurors would have to be granted anonymity. This judicial conclave occurred before the first hearing on the Ford trial, shortly after Hedlund had received the criminal complaint.

*Id.* at 14.

Finding that the files and record showed conclusively that McKenzie was entitled to no relief, the postconviction court denied the petition and the request for a hearing. *See* Minn.Stat. § 590.04, subd. 1. The court asserted that judges may meet informally "to discuss issues surrounding the use of an anonymous jury" without violating a defendant's constitutional rights. Moreover, the court reasoned, even if such a meeting were improper, it could not have affected the fairness of McKenzie's trial, since on direct appeal, this court found the use of the anonymous jury to be constitutional.

## I.

McKenzie argues that his trial judge was not impartial because he participated in the judges' meeting and decided to impanel an anonymous jury before affording McKenzie the opportunity to argue against such a procedure. In addition, McKenzie asserts, the

---

1. McKenzie also alleged that the prosecution failed to disclose a post-trial statement by one of its key eyewitnesses that certain witnesses misrepresented the terms of their plea agreements. In his brief to this court, McKenzie alludes to these issues; however, he fails to address them in the argument portion of his brief. "[I]ssues not argued in briefs are deemed waived on appeal." *State v. Grecinger,* 569 N.W.2d 189, 193 n. 8 (Minn.1997).

judge's actions violated a canon of judicial conduct.[2]

## A.

 Due process entitles a criminal defendant

to an impartial and disinterested tribunal * * *. This requirement of neutrality * * * safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.

*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). Accordingly, a judge must have "no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997).

 We begin from the presumption that a judge has discharged his or her judicial duties properly. *See Bracy*, 117 S.Ct. at 1799. The allegations made by McKenzie simply are inadequate to overcome this presumption. McKenzie contends that the trial judge "was predetermined [sic] to rule for the state-favored position, anonymity," merely by virtue of having attended the meeting; however, he has identified nothing in the record — other than the ruling itself — that might betray the trial judge's lack of impartiality.[3] In fact, the record shows that when the defense initially raised the issue of juror anonymity, the trial court responded that he "frankly ha[d] not made up [his] mind on th[e] issue." Later, the trial court conducted a hearing at which McKenzie argued against the use of an anonymous jury; it was only at the conclusion of that hearing that the trial court ordered that the jurors' anonymity be maintained.

 McKenzie charges that the trial judge's lack of impartiality is betrayed by the judge's "real" reasons for impaneling an anonymous jury, which McKenzie asserts "clearly were * * * different from those he presented in court." When evaluating the impartiality of a judge presiding over a criminal jury trial, this court has looked to whether the judge's conduct has prejudiced the jury. *See, e.g., State v. Stewart*, 276 N.W.2d 51, 55 (Minn.1979); *State v. Rasmussen*, 268 Minn. 42, 44–46, 128 N.W.2d 289, 290–91, *cert. denied*, 379 U.S. 916, 85 S.Ct. 267, 13 L.Ed.2d 187 (1964). This standard dovetails with the standard used to review a decision to impanel an anonymous jury B the same standard this court employed in McKenzie's direct appeal. The decision to impanel an anonymous jury is judged not by the trial court's subjective reasons for the decision, but by whether "there is strong reason to believe the jury needs protection from external threats" and whether "reasonable precautions" have been taken to minimize the likelihood of prejudicial effect upon the jury. *McKenzie*, 532 N.W.2d at 219. We already have determined that the likelihood of jury prejudice was minimized to the extent possible and, hence, that McKenzie was not deprived of the right to a fair trial by jury. *See id.* at 219–20. It follows that McKenzie was not deprived of the right to a trial presided over by an impartial judge, either.

## B.

 McKenzie argues that the judges' meeting was improper under Canon 3 of the Minnesota Code of Judicial Conduct, which reads, in pertinent part:

A judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the

---

2. McKenzie intertwines the judicial canon and due process arguments. While both issues arguably bear upon whether a defendant has been afforded a fair trial, "the Due Process Clause * * * establishes a constitutional floor" for the protection of individuals' rights. *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997). Whether the Code of Judicial Conduct confers rights upon persons who are not subject to its provisions is quite a different issue, which we address separately.

3. McKenzie intimates that the trial judge based the decision to impanel an anonymous jury on prejudicial information about his character and affiliations, which allegedly was presented at the judges' meeting. However, the newspaper article upon which McKenzie relies does not address what information the judges considered. Thus, McKenzie's assertion is pure conjecture, which we decline to consider.

judge outside the presence of the parties concerning a pending or impending proceeding, except that * * * [a] judge may consult with other judges and with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities.

Minn.Code of Judicial Conduct Canon 3A(7)(c) (1995).[4] From this language, McKenzie infers that "[j]udges may engage in ex parte discussions * * * which relate to administrative matters only," and that a judge may "confer with fellow judges" *only* if they "have been pre-assigned to assist him with adjudicatory matters."

■ It is not necessary for us to decide whether the canon confers rights upon a criminal defendant, for McKenzie misinterprets the canon. Clearly a judge may not discuss a trial with one party unless the opposing party is present; however, McKenzie has not cited any authority for the proposition that a judge may not discuss potential issues with a judicial colleague in the absence of the parties. We believe it is inherently a judge's role to assist colleagues in performing their adjudicative responsibilities, whereas the phrase "whose function is to aid the judge" refers to "court personnel." Our system of justice would suffer greatly if judges could not discuss cases with, solicit input from, and benefit from each other's richly varied experiences. Certainly judges may not gather behind closed doors to decide issues of constitutional import before the parties have had the chance to advocate their positions. But as we noted above, the record in this case unequivocally demonstrates that the trial judge did not make a final decision on the issue until he heard and considered the parties' arguments.

## II.

■ The Sixth Amendment of the federal constitution guarantees defendants the right to confront the witnesses against them. *See* U.S. Const. amend. VI. Denial of a defendant's opportunity to cross-examine a

witness constitutes a denial of due process. *See* U.S. Const. amend. XIV; *Pointer v. Texas,* 380 U.S. 400, 403–05, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Because he was not allowed to participate in the judges' meeting, McKenzie argues, his right to confront witnesses was violated. Nowhere in McKenzie's postconviction petition is it alleged that testimony was given at the judges' meeting. Thus, the Confrontation Clause is not implicated. McKenzie's argument is without merit.

In our view, the files and record conclusively demonstrate that McKenzie was not entitled to relief. We hold that the postconviction court did not abuse its discretion in denying McKenzie's petition.

Affirmed.

---

4. The provision of the Code of Judicial Conduct cited by McKenzie was not in effect when McKenzie's trial judge allegedly met with other judges and decided to impanel an anonymous jury. *See* Minn.Code of Judicial Conduct Canon 3A(4) (1988). However, we do not deem the two provisions to be inconsistent.