*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A12-1493**

State of Minnesota,
Respondent,

vs.

James Irving Dale,
Appellant.

**Filed September 8, 2014
Affirmed
Rodenberg, Judge**

Sherburne County District Court
File No. 71-CR-11-942

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen Heaney, Sherburne County Attorney, Samuel Wertheimer, II, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Rodenberg, Judge; and

Toussaint, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant James Irving Dale challenges his convictions of second- and third-degree burglary, arguing that the stop and search of his vehicle were unlawful and that he received ineffective assistance of counsel at his first contested omnibus hearing. He raises additional issues in his pro se supplemental brief. We affirm.

**FACTS**

At approximately 4:30 a.m. on June 29, 2011, an alarm indicated a break-in at the Santiago Country Store in Sherburne County, near St. Cloud. Sergeant Steven Olmanson responded to the alarm, examined the scene, and reviewed surveillance video. He determined that a thin, white male wearing a baseball cap and a bandana over his face had used a crowbar to break the glass on the main door of the store and entered the store through the opening. Once inside, the burglar took three large plastic garbage bags from the store shelves and filled them with cigarettes, lighters, and beef jerky. He left through the rear service door. Sergeant Olmanson could not ascertain how the burglar had traveled to the store.

At approximately 3:00 p.m. that same day, Sergeant Olmanson learned that Officer Timothy Costello of the Minneapolis Police Department had received information from an informant about a man named "Jim" who was traveling from the St. Cloud area to sell cigarettes he had stolen during a burglary, with the cigarettes in black garbage

bags.[1]  The informant stated that Jim liked to break into safes and wore a bandana.  He said that Jim was a white male who drove a blue van, and the informant gave Officer Costello the Minneapolis address where Jim lived.  The informant led officers to this address, and police obtained a photograph of appellant from public records.  The informant identified appellant as Jim.  Motor vehicle records confirmed that appellant owned a blue van, which was not then present at the address.  Officer Costello began drafting a search warrant for the residence, believing that appellant was there.

Officer Costello received a telephone call from the informant as he was drafting the warrant.  The informant stated that he had recently spoken with appellant by telephone and that appellant was en route to a specific intersection in Minneapolis to sell cigarettes.  Police saturated that intersection looking for appellant.  Officer Costello then received another phone call from the informant wherein the informant stated that appellant would first be stopping for gas at the Amoco gas station on the corner of Lake Street and 18th Avenue.  Officer Costello went to the gas station.

About five minutes later, a blue van pulled into the gas station.  As the driver left the van and walked into the gas station, Officer Costello identified him as appellant.  Officer Costello noticed that appellant had a sweat ring on his back consistent with having driven for some time.  Officer Costello made radio arrangements for a marked

---

[1] Officer Costello testified that he has known the informant for ten years, has worked with him for two years, and has had contact with him almost every day.  The informant had made approximately 20 controlled purchases of illicit substances for police and had never provided false information to police.  The controlled purchases allowed police to obtain search warrants and had led to criminal charges and convictions.  The informant, who has a criminal record, is paid for his cooperation with police.

squad car, driven by Officer Mark Johnson, to stop appellant as he drove away from the gas station. Several unmarked squad cars followed appellant as he left the gas station and went east on Lake Street, eventually pulling into an alley next to a grass field. Officer Johnson then activated his squad's overhead lights, while Officer Costello pulled his unmarked squad in front of appellant to block his escape. Appellant got out of the van, and was immediately handcuffed and placed into a marked squad car. Officer Costello approached the van and, from outside the open driver's side door, saw tools and gloves on the back seat and a black garbage bag full of cigarettes on the floor near the back seat. Police later photographed the van and the contraband it contained, but did not take a picture from Officer Costello's initial vantage point near the driver's side door.

Minneapolis police then called Sherburne County Sergeant Olmanson informing him of the arrest. Sergeant Olmanson drove to Minneapolis and interviewed appellant. He then decided to drive appellant back to Sherburne County and to have the van towed there. During the trip, appellant escaped from his handcuffs and left the squad car, attempting to flee across an open field. He was recaptured, and later told Sergeant Olmanson that he suffered a black eye from falling down while fleeing. Once in Sherburne County, Sergeant Olmanson applied for a warrant to search the van. The warrant was issued and police confirmed that the contraband in the van had been stolen from the Santiago Country Store. Appellant was charged with second- and third-degree burglary in violation of Minn. Stat. § 609.582, subds. 2(a)(4), 3 (2010).

A contested omnibus hearing was held on appellant's motion to suppress evidence. The district court found that the informant's tip to Minneapolis police was reliable

4

because police corroborated the information and the informant accurately predicted appellant's future behavior. The district court held that the police had probable cause to search the vehicle based on the informant's tip, under the *Carroll* doctrine. *See Carroll v. United States*, 267 U.S. 132, 154, 45 S. Ct. 280, 285 (1925) (allowing police to search a vehicle they have probable cause to believe is carrying contraband).

Alternatively, the district court held that the stop was justified by reasonable, articulable suspicion and that Officer Costello observed the stolen cigarettes in plain view from outside the driver's door, thus giving him probable cause to search the vehicle. In so holding, the district court stated: "The officer's testimony that he could see cartons of cigarettes in the open garbage bag without entering the van is credible. The photographs in evidence do not display that vantage point, but do document that the bag was open and cigarette cartons were in view."

After the contested omnibus hearing, the district court granted appellant's request to discharge his public defender and proceed pro se. Before trial, appellant moved to dismiss, arguing that the state withheld video-recording evidence from the dash camera of the squad car driven by Officer Johnson. Appellant's former attorney had requested dash-camera evidence from the state before the first contested omnibus hearing, and had been told by the Minneapolis Police Department, through the Sherburne County Attorney, that no dash-camera recording of appellant's stop existed. Officer Costello testified at the omnibus hearing that Officer Johnson's squad car did not have a dash camera. The district court denied appellant's motion to dismiss.

After a bench trial, the district court found appellant guilty of both counts in the complaint, and this appeal followed. We stayed appellant's direct appeal so that he could pursue postconviction proceedings in the district court. He raised ten issues in his postconviction petition. The district court summarily denied the petition on seven issues and granted appellant an evidentiary hearing limited to these issues: (1) whether appellant's trial counsel was ineffective, (2) whether there was newly discovered and exculpatory evidence, and (3) whether the state failed to turn over exculpatory evidence or the state's witnesses provided perjured testimony at trial.

At the evidentiary hearing, appellant introduced four photographs of the van he was driving on the day of his arrest. The photographs show different viewpoints of the van, including one from the driver's door approximating Officer Costello's vantage point when he saw a garbage bag full of cigarettes. Appellant argued that his trial counsel was ineffective because he failed to take photographs of the van from this vantage point in order to impeach Officer Costello at the omnibus hearing.[2]

The district court found that appellant failed to demonstrate that his counsel had not exercised the customary skills and diligence of a reasonable competent attorney under similar circumstances. The district court also reasoned that "obtaining photographs of [the] van after [appellant's] arrest would not have altered the district court's analysis of whether there was probable cause to search the van" because it alternatively held that the search was permissible under the *Carroll* doctrine based solely on the informant's tip.

_____

[2] He also argued that his trial counsel was ineffective because he did not obtain dash-camera evidence from the state, but this argument is not made on appeal. And, as discussed below, the district court found that no dash-camera evidence existed.

6

Before the evidentiary hearing and in response to appellant's petition for a writ of mandamus, the Minneapolis Police Department voluntarily disclosed evidence showing that squad 391 was equipped with a dash camera, but squad 392 was not. Previously, Officer Costello testified that Officer Johnson was driving squad 391 when he stopped appellant. According to the newly discovered evidence, Officer Johnson's car would have had a dash camera at the time appellant was stopped.

The district court made extensive findings concerning the dash-camera evidence. It concluded that the earlier testimony that Officer Johnson was driving squad 391 when he stopped appellant was a mistaken belief and that Officer Johnson was actually driving squad 392, which did not have a dash camera. Officer Costello testified that Officer Johnson went back and looked in the squad car he had been driving shortly after the arrest and found that it did not have a dash camera. The state also introduced a VHS tape from squad 391 showing all stops from June 8 through July 21, 2011. The district court's in-camera review of the tape showed no recording of appellant's arrest.

The district court found "that the state met all of its disclosure obligations to the best of its ability," but "that the Minneapolis officers involved in this case failed to document which squad car was used in [appellant's] arrest and were sloppy in their response to the Sherburne County Attorney's Office requests [for discovery]." It concluded that "no videotaped evidence exists concerning the events of [appellant's] June 29, 2011 arrest" and that the record "does not demonstrate that the state withheld evidence or failed to turn over exculpatory evidence."

The district court also analyzed appellant's contention that the state's witnesses had perjured themselves by earlier testifying that Officer Johnson had been driving squad 391. The district court held that "Officer Costello's testimony was clearly based on memory and belief and was mistaken as to the squad car number, but was correct in the sense that the marked squad actually used by Officer Johnson . . . did not have a video camera." It concluded that the state had not offered perjured testimony. It therefore denied appellant's petition for postconviction relief. Appellant appealed that denial, and his two appeals were consolidated.

## DECISION

Appellant argues on appeal that the district court erred in denying appellant's motion to suppress evidence and that he received ineffective assistance of counsel at his first omnibus hearing. We also consider several additional issues raised by appellant in his pro se supplemental brief.

## I.

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). We review reasonable suspicion and probable cause determinations de novo. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997).

The United States and Minnesota Constitutions guarantee individuals the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. The temporary detention of an individual during a traffic stop is a

8

seizure.  *State v. Fort*, 660 N.W.2d 415, 418 (Minn. 2003).  A traffic stop must be justified at its inception and reasonable in its scope.  *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879 (1968)).  An investigatory stop is valid where the police officer has a "reasonable, articulable suspicion that criminal activity is afoot."  *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted).

Appellant argues that the stop and search of his van by Minneapolis police were unlawful.  We note that Minneapolis police conducted a limited search of the van by taking photographs before it was towed to Sherburne County and a warrant was obtained to search the vehicle.  The district court concluded that there were two exceptions to the warrant requirement that justified the search of appellant's van: (1) the *Carroll* automobile exception, and (2) the plain-view exception.[3]  Accordingly, we review whether the Minneapolis police were justified in searching the van without a warrant.

A search of a vehicle without a warrant is justified when there is probable cause to suspect that the vehicle is carrying contraband or illegal merchandise.  *See State v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999) (citing *Carroll*, 267 U.S. at 154, 45 S. Ct. at 285).  The probable cause necessary to support a warrantless search of a motor vehicle "must be based on objective facts that could justify the issuance of a warrant."  *United States v. Ross*, 456 U.S. 798, 808, 102 S. Ct. 2157, 2164 (1982).

---

[3] The later search of the van resulting in seizure of the stolen merchandise was authorized by a warrant.  But the application for the search warrant relied upon evidence obtained by the Minneapolis police as a result of the stop.

9

Here, the police were acting on information provided by an informant. When the facts supporting probable cause are so provided, assessment of probable cause requires examining the credibility and veracity of the informant. *Munson*, 594 N.W.2d at 136. We examine six factors to determine the reliability of an informant:

> (1) a first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). "An informant's reliability is not enhanced if the informant merely gives information that is easily obtained." *Id.*

Before the search, Minneapolis police were told by Sergeant Olmanson that a white male wearing a bandana on his face had broken into a store with a crowbar and placed stolen cigarettes in black garbage bags. The other facts upon which the Minneapolis police relied were obtained from an informant. In *Ross*, we held that a sufficient showing by the state on two of six factors can support a finding of probable cause. *Id.* at 304-05. Here, there is a sufficient showing on the same two factors we found present in *Ross*. The factors are whether an informant has previously given police reliable information and whether police corroborated information in the informant's tip.

"[A] simple statement that the informant has been reliable in the past [is sufficient] because this language indicates that the informant had provided accurate information to the police in the past and thus gives the magistrate reason to credit the informant's story."

10

*Id.* at 304 (quotation omitted). Officer Costello testified that this informant had helped with numerous arrests and had never provided false information. The district court credited this testimony. This factor supports a finding that the informant was reliable.

The corroboration factor is satisfied when the informant provides "a detailed prediction of [the suspect's] future behavior that [is] corroborated by police before the search." *Id.* at 305. In *State v. Cook*, an informant provided police with information that an individual was dealing cocaine in a certain location, and described the individual's clothing and vehicle. 610 N.W.2d 664, 666 (Minn. App. 2000), *review denied* (Minn. July 25, 2000). We held that this information "did not predict any future behavior" because it was "simply a report of [the individual's] appearance and present location." *Id.* at 669.

Appellant relies on *Cook* to argue that the informant failed to predict appellant's future behavior. But the informant *did* predict future behavior. The informant accurately predicted that appellant would stop at a specified gas station at a specified time. This case is similar to cases where courts have found an informant to have predicted a suspect's future behavior. *See Ross*, 676 N.W.2d at 305 (noting that an informant predicted that a suspect would appear "at a specified address at a specified time in a described vehicle, all of which was verified by law-enforcement prior to the search"); *Munson*, 594 N.W.2d at 136-37 (holding that past reliability of informant, together with corroboration of details in the tip by police, gave rise to probable cause to search a vehicle). These *Ross* factors support the district court's conclusions that the informant was reliable and that the information supplied provided probable cause to believe that the

11

van contained stolen merchandise. The search of the van was therefore permissible under the *Carroll* doctrine.

Even if we were to conclude that the informant's information did not provide probable cause to search the vehicle, it was more than adequate to establish a reasonable, articulable suspicion of criminal activity. The initial stop of the van was therefore lawful. *See Timberlake*, 744 N.W.2d at 393 (stating that the reasonable-suspicion standard is not high).

> Under the plain view exception to the warrant requirement, the police may, without a warrant, seize an object they believe to be the fruit or instrumentality of a crime, provided: (1) the police are legitimately in the position from which they view the object; (2) they have a lawful right of access to the object; and (3) the object's incriminating nature is immediately apparent.

*State v. Zanter*, 535 N.W.2d 624, 631 (Minn. 1995) (quotation omitted).

The district court found that Officer Costello credibly testified that he could see the garbage bag full of cigarettes from outside the driver's side door. We defer to the district court's credibility determination. *See State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003), *review denied* (Minn. July 15, 2003). Because Officer Costello was in a lawful position when he saw the cigarettes, and their incriminating nature would have been immediately apparent, the police had probable cause to expand the stop to include a search for stolen cigarettes and other merchandise from the Santiago Country Store. The search of appellant's vehicle was therefore justified under the plain-view exception to the warrant requirement.

12

**II.**

Appellant argues that he received ineffective assistance of counsel at his first contested omnibus hearing because his lawyer failed to adequately attack Officer Costello's credibility on the plain-view issue. "A petitioner bears the burden to establish by a preponderance of the evidence that facts exist that warrant postconviction relief." *Tscheu v. State*, 829 N.W.2d 400, 403 (Minn. 2013); *see* Minn. Stat. § 590.04, subd. 3 (2010) (placing the burden of proof on the petitioner).

> [W]hen we review a postconviction court's denial of relief on a claim of ineffective assistance of counsel, we will consider the [postconviction] court's factual findings that are supported in the record, conduct a de novo review of the legal implication of those facts on the ineffective assistance claim, and either affirm the court's decision or conclude that the court abused its discretion because postconviction relief is warranted.

*State v. Nicks*, 831 N.W.2d 493, 503-04 (Minn. 2013). We will not disturb the district court's factual findings unless they are clearly erroneous. *Id.* at 503.

To establish his claim of ineffective assistance of counsel, appellant must show that "(1) his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). "There is a strong presumption that counsel's performance fell within a wide range of reasonable assistance." *State v. Miller*, 666 N.W.2d 703, 716 (Minn. 2003) (quotation omitted).

Appellant submitted four photographs of his van from various viewpoints at the postconviction hearing, including the viewpoint Officer Costello would have had from

13

the open driver's side door when the initial arrest was made. He argues that his attorney was ineffective because he did not take similar photographs before the contested omnibus hearing to impeach Officer Costello regarding the plain-view exception.

Appellant's claim fails because he cannot show that his lawyer was unreasonable in failing to take additional photographs of the van. Appellant's counsel already had photographs of the van with the cigarettes in it before the contested omnibus hearing. Although none of these photographs showed the specific vantage point from the driver's door, they did show that the cigarettes were visible from the outside of the van. The record also shows that appellant's attorney cross-examined Officer Costello regarding his view of the cigarettes from outside the van, but the district court found Officer Costello's testimony credible. Appellant has not overcome the strong presumption that his attorney's performance was reasonable. *See id.*

Moreover, appellant has not shown that there is a reasonable probability the result of the proceedings would have been different had counsel done more. *See Andersen*, 830 N.W.2d at 10. Here, it is nearly certain that the outcome of the proceeding would have been the same even if appellant's counsel had taken photographs of the van as appellant argues he should have. First, the photos submitted in the postconviction proceeding do not prove that the cigarettes were not visible from outside the van. In fact, it appears from the photos that anybody standing outside the van would have been able to look in the windows and see the stolen cigarettes, and the crowbar and red bandana used in the burglary. Second, and regardless of the plain-view exception, the district court

14

determined that there was probable cause to search the van under the *Carroll* doctrine—a determination we affirm.

**III.**

Appellant raises several issues in his pro se supplemental brief, and asks us to also review all of the issues he raised in the postconviction proceedings, without further briefing of those issues.

Appellant argues that the state committed a *Brady* violation by withholding dash-camera evidence from his stop and arrest, and that the Minneapolis Police Department failed to disclose which squad car had pulled appellant over and which squad cars involved in the stop had dash-camera recording equipment. The suppression of evidence that is favorable to a criminal defendant violates due process when the evidence is material to guilt or punishment, regardless of the good or bad faith of the state. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963); *see* Minn. R. Crim. P. 9.01. A *Brady* violation exists when (1) the evidence is favorable, being either exculpatory or impeaching; (2) the state suppressed the evidence; and (3) the defendant was prejudiced by the suppression. *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005).

Much of appellant's argument centers on the fact that Officer Costello initially testified that squad 391 pulled him over and it was later discovered that squad 391 had a dash camera. At the postconviction hearing, appellant elicited testimony that, before the first contested omnibus hearing, the Minneapolis Police Department could have determined which squad car Officer Johnson was driving when he stopped appellant. The district court characterized the department's failure to do so as "sloppy." Officer

15

Costello testified: "Officer Johnson went back and looked almost after the arrest later that date and there was not a video camera in the car [he was driving]." Additionally, the district court viewed the VHS taken from squad 391, which showed that there was no recording of appellant's stop. It found as a fact that Officer Johnson was actually driving squad 392, which did not have a dash camera.

The district court found, after painstaking analysis of the entire record, that there was no squad car recording of appellant's traffic stop. This finding is not clearly erroneous. *See Nicks*, 831 N.W.2d at 503. Because there was no squad car recording, the state did not withhold *any* evidence, and there was no *Brady* violation. *See Pederson*, 692 N.W.2d at 459.

The district court denied several of appellant's postconviction claims for relief without an evidentiary hearing. The denial of a petition for postconviction relief without an evidentiary hearing is reviewed for an abuse of discretion. *Nicks*, 831 N.W.2d at 503. We review issues of law de novo. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007).

In his motion for postconviction relief, appellant argued that he should have been able to reopen the omnibus hearing after the presiding judge recused herself. "A judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct." Minn. R. Crim. P. 26.03, subd. 14(3). In accordance with the Code of Judicial Conduct, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Minn. Code Jud. Conduct Rule 2.11. The code defines "impartial" as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties."

16

"We begin from the presumption that a judge has discharged his or her judicial duties properly." *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998). After two contested omnibus hearings, appellant brought to the district judge's attention a possible conflict of interest because that judge had previously worked as a prosecutor and had prosecuted appellant in a matter unrelated to this case. The district judge, who had no recollection of the previous prosecution, recused. Appellant has presented no evidence of actual bias by that judge, who recused herself as a precautionary measure, not because she thought she was biased. There is nothing in this record to overcome the presumption that the district judge properly discharged her judicial duties. *See id.* Therefore, the district court did not abuse its discretion by denying appellant's request to reopen his omnibus hearing to relitigate issues decided earlier by the recused judge.

We have reviewed the balance of the issues raised in appellant's pro se appeal brief and the memorandum of law in support of his petition for postconviction relief, and we conclude that they are wholly without merit. *See Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951) (stating that "[o]ur function as an appellate court does not require us to discuss and review in detail the evidence for the purpose of demonstrating that it supports the [district] court's findings" and "[o]ur duty is performed when we consider all the evidence, as we have done here, and determine that it reasonably supports the findings"). The district court did not abuse its discretion by denying relief on these issues without a hearing.

**Affirmed.**