*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1808**

In the Matter of the Welfare of:
A. G., Child

**Filed August 22, 2016
Affirmed in part and reversed in part
Bratvold, Judge**

Mower County District Court
File No. 50-JV-15-1579;
50-JV-15-1206

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Megan Burroughs, Assistant County Attorney, Austin, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Connolly, Judge; and Muehlberg, Judge.[*]

## UNPUBLISHED OPINION

**BRATVOLD**, Judge

Appellant A.G. seeks review of his delinquency adjudications for aiding and abetting mail theft, fleeing a police officer by means other than a motor vehicle, and aiding

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

and abetting tampering with a motor vehicle, arguing that the circumstantial evidence is insufficient to support his adjudications. Because we conclude that there is sufficient evidence to support the adjudications for fleeing a police officer and tampering with a motor vehicle but insufficient evidence to support the adjudication for aiding and abetting mail theft, we affirm in part and reverse in part.

**FACTS**

Two of A.G.'s delinquency adjudications stem from the same incident; the third involved events that occurred two months later. On August 14, 2015, consecutive court trials were held on the state's two petitions. A.G. was adjudicated delinquent, placed on supervised probation, and required to attend a program at East Regional Juvenile Detention Center. We conduct an independent review of the trial record. *See Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951) (stating that the duty of an appellate court "is performed when we consider all the evidence . . . and determine that it reasonably supports the findings").

**Incident 1 – Aiding and Abetting Mail Theft and Fleeing**

The district court found the following facts: During the morning of May 13, 2015, A.G. and three or four other juveniles, including E.D., skipped school, drank alcohol, and walked around the city of Austin. One of the juveniles stole a package from the front door of a home and "began to open it as he walked across the front yard and driveway of the residence to join the other juveniles on the public sidewalk." W.C., the alleged victim, looked out his home window to see "a person in a red and black jacket running across his driveway from his front door with a package." The package, which was addressed to W.C.,

2

contained medication and syringes. W.C. picked up a larger box, recognized it as his, and noticed that a smaller box was missing from inside the larger box. W.C. called the police.

From W.C.'s house, A.G. and the others walked to a car that one of the juveniles had stolen earlier. At the car, one of the juveniles attempted to start the car and another opened the smaller box, discovered syringes, and dumped them out in the car and on the ground. When they saw a police squad car approaching, the juveniles fled on foot.

The officer followed on foot, saw "a black male wearing a black and red sweatshirt," but lost the juveniles. The officer returned to his car and received a call from a second officer reporting that "he had two juvenile males detained." The first officer went to the second officer's location, and the district court found that the first officer "recognized the two young men who had fled from him minutes earlier." The two males were later identified as A.G. and T.D.; T.D. was carrying the black jacket, according to the district court's findings. In total, the juveniles ran approximately seven blocks, including "behind houses and across multiple streets," before the police apprehended four of them: A.G., E.D., T.D., and G.G.

After trial, the district court took the matter under advisement and later issued its written findings and verdict, finding A.G. guilty of aiding and abetting a mail theft and fleeing a police officer. The district court found that A.G. "knowingly participated" in the mail theft by fleeing with the other juveniles to the stolen vehicle "where the smaller box was opened, and its contents strewn about the interior and exterior of the vehicle." The district court also found that the flight from law enforcement assisted the principal in avoiding apprehension. In response to A.G.'s motion for acquittal, the district court denied

3

the motion and explained that it had determined that the mail theft was not completed in the victim's yard, but "involved also the taking of the smaller packages inside the larger package and transporting them some five blocks by this group of people of which [A.G.] was a participant."

**Incident 2 – Aiding and Abetting Tampering of a Motor Vehicle**

The district court found the following facts: In the early morning of July 14, 2015, C.S. called the Austin City Police to report that two male juveniles had attempted to enter her garage. She reported that "she initially observed one of the juveniles peeking in a vehicle parked on the street in front of her home and the other walking northbound on the sidewalk adjacent to the street." When one of them noticed that the garage door was up, he called to the other and they both started to walk up C.S.'s driveway, "at which point [C.S.] yelled at the two to stay away." The juveniles ran. C.S. then called the police, describing the two juveniles as "a heavy set black male with curly hair wearing a black shirt, black shorts, and black tennis shoes, and a taller thinner white male wearing a gray hoody sweatshirt with dark arms."

An officer responded to C.S.'s call in his squad car and searched the area. A pedestrian stopped the officer and reported two juvenile males running in the neighborhood and gave "a description matching the one given by [C.S.]." Recalling an earlier report about juvenile males at a home, the officer drove in that direction, when he "observed a male wearing a gray hoody sweatshirt running around the corner of a house next to [that] residence followed by a heavier set black male wearing black shorts and a black shirt." The black male, later identified as A.G., stopped running and the officer took him into custody.

4

The officer found the second juvenile, C.M., in a closet in the home with "a gray hoody sweat shirt" and "a pile of loose change . . . and other personal property that the homeowner stated did not belong there." C.S. identified A.G. and C.M. as the two males she had seen in her driveway that morning. Later the same morning, police received a report from V.M. that "her vehicle had been entered the night before by someone without her permission and that approximately ten dollars in loose change was missing from the vehicle." V.M. lives within a few blocks of C.S.

After being arrested, A.G. and C.M. were placed in the back of the same squad car, where they had a conversation that was recorded by the squad dashboard camera. The district court's findings based on the recording were, as follows:

> [A.G.] is before this Court because he and the second juvenile were filmed by a dash camera while seated alone in a squad car at [the] residence earlier that morning when [A.G.] asked the second juvenile "*Did you ditch all that change?*" to which the second juvenile responded, *"Yeah."* Based on this conversation the prosecuting attorney argues that [A.G.] and the second juvenile removed the loose change found in the closet at the . . . residence from [V.M.'s] car the night before.

Based on these findings, the district court found A.G. guilty of aiding and abetting the tampering with a motor vehicle, reasoning that A.G. and C.M. "aided each other in the removal of loose change from the interior of [V.M.'s] vehicle without her consent."

## D E C I S I O N

This court reviews a sufficiency-of-the-evidence claim by determining whether legitimate inferences drawn from the record evidence would allow a fact-finder to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868,

5

874 (Minn. 2012). "When reviewing the sufficiency of the evidence leading to a conviction, we view the evidence in the light most favorable to the verdict . . . ." *State v. Hayes*, 831 N.W.2d 546, 552 (Minn. 2013) (quotation omitted). We "assume that the [fact-finder] believed all of the state's witnesses and disbelieved any evidence to the contrary." *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999); *see also State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009) (noting that the same standard applies to court trials). This court "will not disturb the verdict if the [fact-finder], acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offenses. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004) (quotations omitted). Reversal is appropriate, however, "if facts proving an essential element of the offense are left more to conjecture and speculation than to reasonable inference." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005).

"A conviction based on circumstantial evidence receives heightened scrutiny." *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013) (quotation omitted). Circumstantial evidence supports a conviction if it is "consistent only with the defendant's guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Bowles*, 530 N.W.2d 521, 534 (Minn. 1995).

This court applies a two-step analysis to determine whether circumstantial evidence is sufficient to support a conviction. *See State v. Al–Naseer*, 788 N.W.2d 469, 473–74 (Minn. 2010). First, this court must identify the circumstances proved, deferring to the fact-finder's acceptance of these facts and assuming that the fact-finder rejected all contrary

facts. *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013). Second, we determine whether the circumstances proved are inconsistent with any rational hypothesis other than guilt. *Id.* at 599. This court does not, however, give "deference to the fact finder's choice between reasonable inferences." *Id.* (quotation omitted). To sustain a conviction, the circumstances proved "must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Al–Naseer*, 788 N.W.2d at 473 (quotation omitted). "In other words, the evidence must point unerringly to the accused's guilt." *Hayes*, 831 N.W.2d at 553.

An appellant must show something more than mere conjecture to overturn a conviction based on circumstantial evidence. *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998). "On appeal, we do not retry the case, but merely determine whether there was sufficient evidence to support the [fact-finder's] conclusion." *State v. Schneider*, 597 N.W.2d 889, 895 (Minn. 1999).

## I. Aiding and Abetting Mail Theft

A.G. argues that the evidence is insufficient to support his adjudication of aiding and abetting mail theft because the state failed to prove the elements of the aiding-and-abetting statute.

A person commits mail theft when he or she "intentionally and without claim of right removes the contents of mail addressed to another." Minn. Stat. § 609.529, subd. 2(4) (2014). In addition, a person is "liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the

other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2014). The "intentionally-aids" element is comprised of two principles: (1) "the defendant knew that the alleged accomplices were going to commit a crime" and (2) "the defendant intended his presence or actions to further the commission of that crime." *State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015) (quotations omitted).

The state must prove a separate mens rea component for each principal. *State v. Huber*, 877 N.W.2d 519, 524 (Minn. 2016). "A [fact-finder] may infer the requisite state of mind from a variety of facts, including presence at the scene of the crime, [and] a close association with the principal offender before and after the crime . . . ." *State v. Bahtuoh*, 840 N.W.2d 804, 810 (Minn. 2013); *see also State v. Swanson*, 707 N.W.2d 645, 659 (Minn. 2006) (noting that the fact-finder can infer intent from the "defendant's flight from the scene of the crime with the principal" (quotation omitted)).

"Mere presence at the scene of a crime does not alone prove that a person aided or abetted." *State v. Ostrem*, 535 N.W.2d 916, 924 (Minn. 1995). But "active participation in the overt act which constitutes the substantive offense is not required." *Id.* In addition, if the record "shows that a person is present at the commission of a crime without disapproving or opposing it," the fact-finder may "consider this conduct in connection with other circumstances [to] reach the conclusion that he assented to the commission of the crime, lent to it his approval, and was thereby aiding and abetting its commission." *State v. Pierson*, 530 N.W.2d 784, 788 (Minn. 1995) (quotation omitted).

Here, the district court found that A.G. "knowingly participated in the theft of W.C.'s [mail] by fleeing with . . . the others six blocks to the stolen vehicle where the

8

smaller box was opened, and its contents strewn about the interior and exterior of the vehicle." The district court also found E.D.'s testimony that the other juveniles tried to convince the principal to return the box was "self-serving" and not credible. Because the state offered only circumstantial evidence on the mens rea requirements, we apply the circumstantial-evidence test.

### A.  Circumstances Proved

"When reviewing the sufficiency of circumstantial evidence, our first task is to identify the circumstances proved." *Al-Naseer*, 788 N.W.2d at 473 (quotation omitted). To identify the circumstances proved, we "defer, consistent with our standard of review, to the [fact-finder's] acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* (quotation omitted). "Stated differently, in determining the circumstances proved, we consider only those circumstances that are consistent with the verdict." *Silvernail*, 831 N.W.2d at 599.

Here, the circumstances proved are in the district court's findings and order, which are summarized in this opinion. On the morning of the incident, A.G. skipped school with three or four other juveniles.[1] One of the juveniles walked up to W.C.'s front door step, stole a package, and ran away with the other juveniles. The district court found that the theft continued as the juveniles walked down the street to the stolen car, and that A.G.

---

[1]  Although the district court expressed some doubt regarding the testimony about which juvenile was the principal who stole the package, the identity of the principal is not relevant to the issues on appeal.

actively participated in the group. When the police approached the juveniles in the car, A.G. ran away with the others.

### B.      Rational Inferences

Next, we must determine if those circumstances are consistent with guilt and inconsistent with any rational hypothesis other than guilt. *See Silvernail*, 831 N.W.2d at 599. This court independently examines "the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with rational hypotheses other than guilt." *Al-Naseer*, 788 N.W.2d at 473–74 (quotation omitted). This court "give[s] no deference to the fact finder's choice between reasonable inferences." *Id.* at 474 (quotation omitted). "[I]f any one or more circumstances found proved are inconsistent with guilt, or consistent with innocence, then a reasonable doubt as to guilt arises." *Id.* (quotation omitted).

The caselaw allows the fact-finder to infer the requisite mental state from factors such as companionship with the principal, conduct before and after the offense, and flight from the scene of the crime with the principal. *See Bahtuoh*, 840 N.W.2d at 810; *Swanson*, 707 N.W.2d at 659. Here, the state had the burden to demonstrate that A.G. "knew that the alleged accomplices were going to commit a crime" and that he "intended his presence or actions to further the commission of that crime." *See Taylor*, 869 N.W.2d at 15 (quotations omitted). Our review of the evidence shows that the state proved A.G.'s presence, a close association with the principal, and flight after the offense. There are, however, other rational inferences that are inconsistent with guilt.

Another rational inference from the circumstances proved is that A.G. did not know that the principal was going to steal the package and did not intend his presence or actions to further the commission of that crime. The evidence supports the inference that A.G. fled from the police. But this court does not defer to the fact-finder's choice between reasonable inferences, *see Al-Naseer*, 788 N.W.2d at 473-74, and it is not clear that A.G. fled because of his guilt for this particular offense. He may have fled because of the stolen car, because he was skipping school and drinking alcohol, or because he thought that he might be implicated in the mail theft. At closing, the state argued that the juveniles were "looking for trouble." Even if we accept that this inference is supported by the evidence, it does not follow that A.G. knew the principal would steal W.C.'s package or that A.G. intended his continued presence to encourage the theft. Accordingly, we conclude that because there are other rational inferences that are consistent with innocence and inconsistent with guilt, the evidence is insufficient to support A.G.'s delinquency adjudication for aiding and abetting mail theft.

## II. Fleeing a Police Officer

A.G. argues that the district court's findings regarding the fleeing adjudication are clearly erroneous. Fleeing a police officer by means other than by vehicle is defined by statute as follows:

> Whoever, for the purpose of avoiding arrest, detention, or investigation, or in order to conceal or destroy potential evidence related to the commission of a crime, attempts to evade or elude a peace officer, who is acting in the lawful discharge of an official duty, by means of running, hiding, or by any other means except fleeing in a motor vehicle, is guilty of a misdemeanor.

11

Minn. Stat. § 609.487, subd. 6 (2014). Because there is direct evidence supporting this adjudication, we do not apply the circumstantial-evidence test.

A.G. contends that the record does not support the district court's finding that the first officer recognized the two young men who had been apprehended by the second officer. A.G. notes that although the second officer testified that first officer identified both juveniles, the first officer testified that he only recognized the other juvenile as the person with the red and black sweatshirt. A.G. argues that "[b]ecause the record fails to establish beyond a reasonable doubt that [he] was one of the two boys who ran from [the first officer], his delinquency adjudication for fleeing a police officer must be reversed."

When asked at trial if he recognized the individuals detained by the second officer, the first officer responded: "The one individual was carrying the black and red sweatshirt at that point. It appeared that he had taken it off." On cross examination, the first officer again identified T.D.: "And that's when I could I observed [sic] one of the individuals running that I identified with the black and red sweatshirt." In contrast, the second officer testified that, after he arrived at the scene, the first officer identified both T.D. and A.G. as "two of the males that were that he believed were running."

Even if we agree with A.G.'s assessment of the first officer's testimony, one other piece of evidence supports the fleeing-the-police adjudication: E.D.'s testimony is direct evidence that the juveniles, including A.G., fled when they saw the police officers coming. Because "a conviction can rest on the uncorroborated testimony of a single credible witness," *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted), E.D.'s

12

testimony is sufficient to support A.G.'s adjudication for fleeing a police officer.[2] Given the heavy burden A.G. must carry to overturn a conviction, *see State v. Vick*, 632 N.W.2d 676, 690 (Minn. 2001), we conclude that the district court's finding that A.G. was guilty for fleeing a police officer is supported by sufficient evidence.

### III.   Aiding and Abetting Tampering with a Motor Vehicle

A person is guilty of the misdemeanor of tampering with a motor vehicle when he or she "tampers with or enters into or on a motor vehicle without the owner's permission." Minn. Stat. § 609.546 (2014). The applicable aiding-and-abetting law is the same as the law discussed above.

#### A.   Circumstances Proved

Here, the circumstances proved are: (1) C.S. identified A.G. in court as the juvenile who looked into her neighbor's car, commented on C.S.'s open garage door, walked toward her car with C.M., and then fled with C.M. when C.S. yelled at them; (2) on the same morning that C.S. saw A.G. and C.M. outside her home, V.M. noticed the change missing from her car, which is located in the same neighborhood as C.S.; (3) A.G. was apprehended

---

[2]   We note that because E.D. was an accomplice, his testimony requires independent corroboration to sustain a verdict. *See State v. Staunton*, 784 N.W.2d 289, 297 (Minn. 2010) (noting that "[a] conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense"). A.G. does not challenge his adjudication on this ground. In fact, A.G. contends on appeal that "E.D. had no reason to fudge facts" because the charge against him had already been dismissed as part of his plea agreement and "he had nothing to gain by making himself or others look good." Even if A.G. had raised a corroboration issue, however, we have reviewed the record and concluded that it contains sufficient evidence to "restore confidence in the truth of the accomplice's testimony." *Id.* (quotation omitted). Specifically, the second officer testified that the first officer, while at the scene, identified A.G. as one of the fleeing juveniles.

13

while running with another juvenile fitting the description provided by C.S., (4) A.G. was wearing clothes matching the description provided by C.S.; (5) the other juvenile, C.M., was arrested while hiding in a closet next to a pile of loose change, which the homeowner stated did not belong there; and (6) A.G. asked the C.M. a question that appeared to show A.G. knew about the coins and that they were stolen. Despite A.G.'s argument about the content of the squad video recording, we have determined the district court's finding is not clearly erroneous.

### B. Rational Inferences

While the statement made by A.G. in the squad car provides direct evidence for the knowledge element, the other elements were still proved by circumstantial evidence. *See State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016) (recognizing an elements-based approach to applying circumstantial-evidence review). The district court inferred the requisite intent-to-aid mental state from A.G.'s conduct before and after the offense and his relationship with the principal. Although this is permissible, *see Bahtuoh*, 840 N.W.2d at 810, *Swanson*, 707 N.W.2d at 659, we do not defer to the fact-finder's choices between rational inferences on circumstantial-evidence review. *See Al-Naseer*, 788 N.W.2d at 474.

The state offered evidence, through C.S., that A.G. was "peeking" in at other cars on the morning of the offense, commented on C.S.'s open garage door, and fled when C.S. confronted him. This does not directly relate to V.M.'s car, but it does provide evidence of intent. Combined with A.G.'s statement on the squad video recording, which implies he knew of the crime, and the fact that A.G. fled with the principal to the home where the principal was apprehended in a closet with a pile of loose change, the record only supports

one reasonable inference: that A.G. knew the principal was going to commit the offense and intended his presence to support the offense. Accordingly, we conclude that there is sufficient circumstantial evidence to support A.G.'s adjudication for aiding and abetting the tampering with a motor vehicle.[3]

**Affirmed in part and reversed in part.**

---

[3] We note that, although no party raises it on appeal, the record is unclear regarding whether A.G. was adjudicated for tampering with a motor vehicle or aiding and abetting tampering with a motor vehicle. The district court's disposition order and the findings and verdict all indicate that it was a tampering adjudication, but the district court employed aiding-and-abetting analysis in its memorandum. In addition, the parties briefed the adjudication as an aiding-and-abetting adjudication. We address the issues as briefed. *See McKenzie v. State*, 583 N.W.2d 744, 746 n.1 (Minn. 1998) (noting that issues not briefed on appeal are waived).