*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0821**

State of Minnesota,
Respondent

vs.

James Lamar Davis,
Appellant.

**Filed May 31, 2016
Affirmed
Ross, Judge
Reyes, Judge, dissenting**

Hennepin County District Court
File No. 27-CR-14-11916

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

A jury heard evidence that James Davis is a member of a Minneapolis street gang and that he, accompanied by two of his gang allies, confronted and shot two men affiliated with a rival gang. The jury found Davis guilty of two counts of attempted intentional second-degree murder for the benefit of a gang. Davis argues on appeal that we should overturn his conviction on four grounds: (1) the district court should not have admitted evidence of his prior bad acts; (2) the properly admitted evidence is insufficient to establish beyond a reasonable doubt that he shot the two victims, that he intended to cause their deaths, or that his conduct toward one of them was intended to benefit a gang; (3) the district court failed to instruct the jury on accomplice testimony; and (4) the prosecutor made statements that constitute misconduct. We hold that the district court did not abuse its discretion either by admitting the bad-acts evidence or in its jury instructions, that the evidence supports each element of Davis's conviction, and to the extent the prosecutor's statements crossed the line, they did not affect Davis's substantial rights because they did not influence the verdict.

## FACTS

K.W. and C.B. left their jobs at Target Field at about 3:00 on an April 2014 morning, and they encountered three men outside. The three men had been waiting. They wore hooded sweatshirts with the hoods partially obscuring their faces. One of the men drew a handgun and fired multiple shots, striking K.W. in the abdomen and C.B. in the spine, paralyzing him.

2

K.W., a former member of the "Taliban" street gang, later told police that the shooter was James Davis, a member of the "1-9s" street gang. The 1-9s gang rivaled the Taliban gang in "wild, wild west" fashion. As K.W. described it, "We're killing each other." K.W. also identified Davis from a photo array, and he named another man, J.M., as having been another of the three hooded attackers.

The state charged Davis and J.M. with two counts of second-degree attempted murder for the benefit of a gang. The district court severed the cases to try the two men separately. This appeal concerns only Davis's case.

The shooter's identity was the primary question at Davis's trial. The state announced its intent to offer prior-bad-acts (*Spreigl*) evidence that Davis was the shooter in a previous gang-related retaliatory shooting that occurred in 2010 beside Lake Calhoun, where Davis allegedly shot and killed a different Taliban gang member while K.W. stood beside the victim. At the time of Davis's trial, Davis had not been charged in that shooting.

The district court conducted a hearing after which it decided that clear and convincing evidence established that Davis participated in the Lake Calhoun shooting. Sergeant Gerry Wallerich testified that Davis is a known member of the 1-9s gang and that K.W. was a member of the rival Taliban gang. The sergeant detailed the 2010 Lake Calhoun shooting and testified that, two years after that shooting, N.P. (who was an eyewitness to the shooting) identified Davis "as a party that looked similar, especially with the nose and other characteristics" to the shooter. He said additionally that K.J. overheard Davis confess to the shooting. And he testified that Davis told him that he had his cellular telephone with him the night of the shooting, and cell-tower data established that Davis's

3

phone was "right next to the murder scene." Sergeant Wallerich said that M.M., a 1-9 gang member and known gang associate, told him that Davis had admitted to the Lake Calhoun shooting, and another 1-9 gang member, D.H., said the shooting was to retaliate for a prior shooting that D.M., the Lake Calhoun victim, was involved in.

K.W. testified at trial, retreating from his post-shooting identification of Davis as the Target Field shooter. He said that although he had initially told police that Davis was the shooter, he believes he was unable to see faces. He claimed that his identification of Davis as the shooter had resulted from being told that J.M. was one of the attackers and that Davis was the shooter. A police officer testified that Davis is known by police as having a documented history associating with 1-9 gang members.

The jury heard the testimony of various other witnesses, and it found Davis guilty as charged. The district court sentenced Davis to serve consecutive prison terms of 186 months and 153 months. Davis appeals his conviction.

## DECISION

Davis challenges his conviction by contending that the district court should not have admitted evidence of the Lake Calhoun shooting. He maintains that the remaining evidence is insufficient to support the finding that he shot the two gunshot victims outside Target Field, that he intended to kill them, or that the shooting was intended to benefit a gang. He argues also that the conviction is infirm because the district court failed to instruct the jury about accomplice testimony and that the prosecutor made improper statements that require reversal. We address each argument.

4

# I

We first consider Davis's argument that the district court improperly allowed the state to inform the jury that Davis was involved in the Lake Calhoun shooting. The district court may allow this type of prior-bad-acts evidence to show motive, intent, knowledge, identity, absence of mistake or accident, or a common scheme or plan. Minn. R. Evid. 404(b). We review the district court's decision to admit this evidence, often referred to as *Spreigl* evidence, for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). The district court may admit *Spreigl* evidence if five elements are met: (1) the state has given the defendant notice; (2) the state clearly indicates what the evidence is being offered to prove; (3) clear and convincing evidence establishes that the defendant participated in the prior act; (4) the evidence is relevant and material to the state's case; and (5) the probative value is not outweighed by its potential unfair prejudice. *Angus v. State*, 695 N.W.2d 109, 119 (Minn. 2005). Davis focuses on the third and fifth elements, arguing that clear and convincing evidence did not show that he was the Lake Calhoun shooter and that the probative value of the evidence does not outweigh the resulting improper prejudice.

### *Clear and Convincing Evidence that Davis Was the Lake Calhoun Shooter*

The district court was satisfied that clear and convincing evidence proves that Davis was the Lake Calhoun shooter, and we see no fault in the conclusion. The district court is in the best position to weigh the competing evidence. *Cf. State v. Kennedy*, 585 N.W.2d 385, 392 (Minn. 1998) (noting the district court's "discretion [in] first weighing the evidence" to assess the strength of the state's case when balancing prejudice and

"determining whether the *Spreigl* evidence should be admitted"), *modified by Ness*, 707 N.W.2d 676. Some of the evidence that supports the district court's finding includes the following: eyewitness N.P. identified Davis "as a party that looked similar, especially with the nose and other characteristics" to the shooter; M.M. "told [police] who the two shooters were in the murder," specifically, "Javon [James] Davis and [D.W.]," after M.M. got a "[d]irect confession from both of them . . . a few hours after the murder"; cellular phone records corroborated that Davis was present at the community center where M.M. says that Davis and D.W. confessed to the murder; Davis revealed that he had been previously shot by a Taliban gang member; the Taliban gang member who assisted in shooting Davis was the man shot and killed at Lake Calhoun; Davis acknowledged that he was carrying his cell phone the day of the Lake Calhoun shooting and technical records place Davis's phone at the scene of that shooting; based on the cell-phone data, Davis's claim that he was in another part of the city at the time of the shooting was false; contemporaneous with the Lake Calhoun shooting, imprisoned 1-9 members were calling Davis from prison; Davis laughingly told a 1-9 gang member that investigating police did not know what was going on.

The inculpatory testimony included evidence of Davis's confession, and it is true that the evidence arrived second-hand. But Davis does not contend that the *Spreigl* hearsay testimony was not admissible for the purposes of the *Spreigl* decision; he argues only that it was not persuasive enough to amount to clear and convincing evidence. The argument overlooks the district court's broad discretion at the *Spreigl* hearing to decide whether to require eyewitnesses to testify about the Lake Calhoun shooting and about Davis's

6

admission to that shooting. *Cf. State v. Kasper*, 409 N.W.2d 846, 847 (Minn. 1987) (faulting court of appeals and holding that trial court at *Spreigl* hearing had broad discretion to decide whether or not to require state to call *Spreigl* witnesses or instead to rely on prosecutor's offer of proof). Although the *Spreigl* testimony about the confession was hearsay, it was admitted as hearsay because Davis agreed through his counsel that the state could present the evidence that way, volunteering, "I don't think that's unreasonable." And we disagree with Davis's implication that hearsay testimony is, by its nature, insufficient to prove an asserted fact clearly and convincingly. The unobjected-to hearsay testimony here, which the district court weighed, established both that Davis contemporaneously confessed to being one of two Lake Calhoun shooters and that he lied to police by claiming he had been in a different, distant part of the city during the shooting. As the district court explained to Davis's attorney after the trial, "But the bottom line is, for whatever reason, you chose to let the *Spreigl* evidence come in the way you let it come in [as hearsay testimony], and, based on the testimony . . . there was clear and convincing evidence . . . to link your client to that incident." A shooter's confession and his false alibi are clear and convincing evidence of his participation, and the additional evidence simply girds that determination.

The dissent begins and ends its disagreement with our holding as to the clear and convincing quality of the state's *Spreigl*-hearing evidence by relying on *State v. Kasper*, 409 N.W.2d at 847, for the proposition that "[t]he state overstated the strength of its evidence connecting Davis to the Lake Calhoun shooting at the *Spreigl* hearing." The dissent accurately quotes the *Kasper* court as stating that "the trial court and the appellate

courts are always free to grant relief, *when appropriate*, if the evidence adduced was not what the prosecutor led the trial court to expect." (Emphasis added.) But it overlooks the phrase "when appropriate" and therefore misses the critical procedural hook here. It is not "appropriate" to grant relief to an appellant on an issue and argument that the appellant never raised. "A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the trial court." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). It is therefore not "appropriate" to consider the relief here, if Davis never made the offer-of-proof argument to the district court. There Davis argued only that "[t]he evidence presented by the State to the Court in support of its motion for admission of *Spreigl* evidence . . . was . . . flawed and . . . not accurate." He argued that the hearsay evidence implicating Davis as the Lake Calhoun shooter was flawed and inaccurate not because the state failed to make good on the offer of proof, but because other evidence—like statements made by the hearsay declarants—purportedly indicated that someone other than Davis was the second shooter. Davis argued the point through counsel: "My . . . ultimate point about that is that it was clear the crime had been solved, the shooting at Lake Calhoun, because [a different person] was arrested in Chicago with the murder weapon. . . . I think it was equally clear based on the MPD's investigation that they had concluded that [T.W.] was a second shooter." Davis was arguing only that the evidence was not clear and convincing.

We observe that the district court did interchangeably refer to the sergeant's testimony as "evidence" and as an "offer of proof." But we see that Davis never made the *Kasper* argument that the dissent makes, and, despite the district court's use of the offer-

8

of-proof phrase, it never analyzed Davis's argument as if he had made the *Kasper* argument.

Independently dispositive, even if Davis made the *Kasper* offer-of-proof argument in the district court, he has not made it in *this* court. "In general, issues not raised in the parties' briefs are waived." *State v. Hurd*, 763 N.W.2d 17, 32 (Minn. 2009); *see also Brocks v. State*, 753 N.W.2d 672, 675 n.3 (Minn. 2008) ("Failure to brief or argue an issue on appeal results in waiver of that issue on appeal."). It is not enough to merely "allude" to issues or arguments; an appellant's failure to "address them in the argument portion of his brief" constitutes waiver. *McKenzie v. State*, 583 N.W.2d 744, 746 n.1 (Minn. 1998). The *Kasper* case appears first (and only) in the dissenting opinion, and Davis's brief never mentions the term "offer of proof." We therefore do not address the argument's merits.[1]

***Balancing Probative Value Against Prejudice***

Both the probative value of the evidence that Davis was one of two or more Lake Calhoun shooters, and the prejudicial weight of the same evidence, are readily apparent. As to its probative value, the evidence tends to show motive and a common scheme or plan. Specifically, it reveals the eye-for-eye, life-for-life, retaliatory exchanges between the rival gangs and specifically involving Davis. But as to its prejudicial nature, the evidence risks inviting a conviction based on Davis's bad character or prior conduct rather than on the evidence of the present charges.

---

[1] Similarly, neither party has raised *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), in relation to the hearsay statements, and our decision therefore assumes without discussion that *Crawford* does not apply here.

The supreme court has held that "the closer the relationship between the other acts and the charged offense, in terms of time, place, or modus operandi, the greater the relevance and probative value of the other-acts evidence and the lesser the likelihood that the evidence will be used for an improper purpose." *Ness*, 707 N.W.2d at 688. We see an obviously close relationship between the Lake Calhoun shooting and the Target Field shooting. Both crimes involve the rival Minneapolis gang members shooting it out. Both involve a group of assailants lying in wait to attack the enemy unexpectedly. And both include a tit-for-tat rationale.

The district court attempted to prevent unfair prejudice by ordering that the state describe the *Spreigl* incident only as a "shooting," not a "murder." It also reminded the jury that Davis was on trial only in the Target Field shooting, not the Lake Calhoun shooting. The prosecutor added to the caution by telling jurors not to use the *Spreigl* evidence to convict Davis of any other crime. These precautions satisfy us that the evidence was not unduly prejudicial in relationship to its more weighty probative value.

## II

We turn to Davis's contention that the evidence was insufficient to support the guilty verdict. We review a challenge to the sufficiency of the evidence by looking to the record to determine whether the evidence, viewed in the light most favorable to the conviction, supports the jury's verdict of guilty beyond a reasonable doubt. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). A defendant is guilty of second-degree murder when he "causes the death of a human being with intent to effect the death of that person or another, but without premeditation." Minn. Stat. § 609.19, subd. 1(1) (2012). The crime is more serious

10

if the defendant committed the murder "for the benefit of, at the direction of, in association with, or motivated by involvement with a criminal gang, with the intent to promote, further, or assist in criminal conduct by gang members." Minn. Stat. § 609.229, subds. 2–3 (2012). Davis maintains that the evidence fails to establish that he shot K.W. and C.B., that he intended to cause their deaths, and that his action toward C.B. was intended to benefit a gang. Each argument fails.

***Evidence of Davis's Identity as the Target Field Shooter***

We reject Davis's argument that the evidence fails to allow the jury to find that he was the Target Field shooter. K.W. identified him as the shooter. He did so when police interviewed him and again when he picked Davis out of a photographic array within days after the shooting. We understand that K.W. recanted at trial, asserting that when he identified Davis he had been merely parroting what others had told him. But the jury weighed the credibility of K.W.'s police statement against his retraction, and it is not our prerogative to dismiss their assessment. As to his retraction, the jury was advised of the "wild, wild west" warfare between the 1-9s and the Taliban, so we doubt the jury had any trouble reasoning why K.W. would identify Davis and then why he might later back away from that identification. The jury also heard from J.M., who testified that Davis admitted to the Target Field shooting. Although Davis offered some exculpatory evidence, we assume from the jury's verdict that the jurors did not believe it. The evidence that favors the conviction was sufficient to prove that Davis shot K.W. and C.B.

11

***Evidence that Davis Intended to Kill K.W. and C.B.***

We likewise reject Davis's argument that the evidence failed to prove that he intended to kill K.W. and C.B. Intent may be, and usually is, inferred from the circumstances. *See, e.g.*, *State v. Thompson*, 544 N.W.2d 8, 11–12 (Minn. 1996) (holding that jury could infer intent to kill from the way the defendant shot the victim); *State v. Harris*, 405 N.W.2d 224, 229 (Minn. 1987) (holding that jury's finding of intent to kill was supported when defendant shot the victim in head at close range). Jurors learned that K.W. and C.B. left their jobs at Target Field and were walking together when Davis approached them and, at close range, fired his handgun several times in their direction. He rendered no aid to either man and did not summon emergency medical assistance to tend to their gunshot wounds. This is enough for the jury to find that Davis intended to kill the two men.

***Evidence that Davis Committed the Attempted Murder to Benefit a Gang***

Davis argues that the state did not prove that his shooting of C.B. was for the benefit of a gang. He maintains that no evidence establishes that C.B. was even a gang member or that shooting him promotes gang business. We can assume that Davis was targeting only K.W. and that he struck C.B. recklessly. This does not help his cause. The supreme court recently observed without further comment that shooting untargeted bystanders during gang violence may establish a crime committed for the benefit of a gang. *State v. Thao*, 875 N.W.2d 834 (Minn. 2016); *see also State v. Caldwell*, 803 N.W.2d 373, 379, 384 (Minn. 2011) (raising no concern with benefit-of-a-gang conviction when victim was bystander). The evidence of the hostility and retaliatory violence between the rival gangs generally,

12

and as perpetrated by Davis specifically, is adequate to establish the gang-benefit element of Davis's murder conviction.

## III

Davis argues that because "[J.M.] was an accomplice" the district court committed reversible error by failing to instruct the jury on accomplice testimony. Davis did not object to the instructions given, and so we review only for plain error. *State v. Vance*, 734 N.W.2d 650, 655 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). We will reverse based on a plain error only if the error is plain, the error affected the defendant's substantial rights, and only "if the fairness, integrity, or public reputation of the judicial proceeding is seriously affected" by the error. *State v. Jones*, 678 N.W.2d 1, 17–18 (Minn. 2004).

Whether or not failing to give the instruction was a plain error, we are confident that the error did not affect Davis's substantial rights or implicate fairness, integrity, or the reputation of the proceeding. Davis maintained at trial not only that he was innocent, but that J.M. was innocent. Davis's counsel urged the jury, "[J.M.] is just as innocent of this crime as Mr. Davis," and "[J.M.] has nothing to do with this crime." Counsel insisted, "The fact [J.M.] was dismissed certainly makes sense." Davis's appellate counsel takes the contrary position, insisting, "It is clear that [J.M.] was an accomplice to the offense." An accomplice instruction would have contradicted Davis's defense theory, implying a fact that Davis denied. It is true that, "[a]s a rule, trial courts have a duty to instruct juries on accomplice testimony in any criminal case in which it is reasonable to consider any witness against the defendant to be an accomplice." *State v. Strommen*, 648 N.W.2d 681, 689

13

(Minn. 2002). But unlike in *Strommen*, where "there was no question that Townsend was an accomplice," *id*., here there was substantial question, urged by Davis, whether J.M. was an accomplice. We will not reverse based on the alleged instructional error here.

**IV**

Davis maintains that the prosecutor engaged in reversible misconduct based on conduct to which Davis did not object. Again, the standard on review is plain error. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). If Davis points to a plain error, the burden shifts to the state to show that "there is no reasonable likelihood that the absence of the misconduct . . . would have had a significant effect on the verdict of the jury." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (quotation omitted). For the following reasons, we conclude that to the extent the prosecutor engaged in misconduct, the misconduct did not cause the verdict.

*Facts Not in Evidence*

Davis maintains that the prosecutor's comments regarding C.B. being shot in the spine during opening and closing arguments was misconduct because it referenced facts not in evidence. Parties are allowed to "argue reasonable inferences from the facts presented at trial." *State v. Young*, 710 N.W.2d 272, 280 (Minn. 2006). The video recording of K.W.'s testimony, which was presented to the jury, discusses C.B.'s physical injury and offers that "he might not walk again." K.W. testified that C.B. is not walking and is confined to a wheelchair. The difference between the evidence presented and the prosecutor's statement describing the shot as having entered C.B.'s spine is negligible. In

any event, a reasonable jury would have inferred that detail from the evidence. We see no misconduct here.

***Closing Argument***

Davis argues that the prosecutor committed misconduct in his closing argument. He has a point. It is true that "the prosecutor and the defense have considerable latitude in closing argument, for neither is required to make a colorless argument." *State v. Smith*, 541 N.W.2d 584, 589 (Minn. 1996). But we agree with Davis that the prosecutor went beyond a properly colorful argument by stating, "This case isn't worth that much to me. Whatever you do, I'm sure I'll see Mr. Davis again." Davis also complains that the prosecutor said that the 2010 shooting is a crime "that the [d]efendant hasn't been charged with yet."

Davis fails to put the primary statement in its context. The prosecutor made those remarks specifically responding to Davis's trial counsel's allegation that the prosecutor had offered J.M. an underhanded deal to testify against Davis. The prosecutor more fully stated as follows:

> If I pulled some stunt like that, if I cut an under-the-table deal with some defendant to suborn perjury, I would have effectively ended my career. This case isn't worth that much to me. Whatever you do, I'm sure I'll see Mr. Davis again. That didn't happen.
> And the other thing, you'll recall, you're supposed to render a verdict based on evidence. What evidence do you have that there's some shady underhanded deal? The Judge had to order him to testify.

The prosecutor here was responding to Davis's counsel's accusation that he had acted unfairly, implying that he had taken excessive measures to secure a conviction against Davis. In context, the first part of the challenged statement, "This case isn't worth that

15

much to me," would likely be taken to mean that Davis's case is not so essential to the prosecutor that he would use unfair means to obtain a conviction. The problem, however, is with the second part, "Whatever you do, I'm sure I'll see Mr. Davis again." In the best light, the statement again indicates that the prosecutor is not preoccupied with obtaining a conviction. But even in that favorable light, the unstated premise abandons the prosecutor's duty not to invite a conviction on anything other than a fair review of the evidence. The implied premise is the prosecutor's reason for not being preoccupied with a conviction in this case: that is, even without a conviction, Davis is such a habitual offender that he will likely offend again. Intentionally or not, this implied premise tends to suggest to the jurors that, unless they convict, Davis will commit more crime. While the prosecutor has latitude to respond to the defendant's arguments, *State v. Jackson*, 773 N.W.2d 111, 123 (Minn. 2009), he may not make comments that inflame the passions of jurors or make "predictions of the consequences of the jury's verdict." *State v. Salitros*, 499 N.W.2d 815, 817 (Minn. 1993). The prosecutor's statement was plain error. It therefore puts the burden on the state to establish that there is no reasonable likelihood that the result would have been different but for the misconduct.

The state meets that burden here. The prejudice that results from the statement is insignificant compared to the substantial evidence of Davis's guilt. This includes, among other things, the eyewitness victim identification of Davis as the Target Field shooter, the account of Davis admitting he was the Target Field shooter, and the similarities between the charged Target Field attack and Davis's Lake Calhoun attack. We are convinced that

16

there is no reasonable likelihood that the outcome would have been different but for the prosecutor's inflammatory comment.

We are less troubled by the prosecutor's statement that the 2010 shooting is a crime "that the [d]efendant hasn't been charged with yet," given the context and evidence. The jury had heard evidence that Davis was identified as the Lake Calhoun shooter and other evidence tying Davis to that shooting. By clarifying that Davis had not yet been charged with that crime, the prosecutor reminded the jury that it should avoid any temptation to convict Davis for the uncharged offense. We have held that when "a reference to a defendant's prior record is of a passing nature, . . . a new trial is not warranted because it is extremely unlikely that the [challenged reference] played a significant role in persuading the jury to convict." *State v. Clark*, 486 N.W.2d 166, 170 (Minn. App. 1992) (quotations omitted). The prosecutor's statement regarding the Lake Calhoun shooting was of a passing nature and did not play a significant role in the trial. We conclude that Davis was not denied a fair trial.

**Affirmed.**

17

**REYES**, Judge (dissenting)

I respectfully dissent. The district court abused its discretion in admitting *Spreigl* evidence of Davis's other crimes that were not proven by clear and convincing evidence at the *Spreigl* hearing. In addition, the state's production of one uncertain eyewitness and hearsay statements at trial to establish that Davis aided and abetted the attempted murder of K.W. at Lake Calhoun in 2010 did not conform to its offer of proof and was "simply too incomplete." *State v. Link*, 289 N.W.2d 102, 106 (Minn. 1979) (quotation omitted). Because the erroneous admission of the other-crimes evidence was not harmless, I would reverse and remand for a new trial.

**I.     The state's *Spreigl* evidence did not rise to the level of clear and convincing.**

Though sometimes admissible, other-crimes evidence, often referred to as *Spreigl* evidence, is disfavored because it is "potentially oppressive," *State v. Spreigl*, 272 Minn. 488, 494, 139 N.W.2d 167, 171 (1965), and creates a risk that the jury will "convict[] a defendant for crimes with which he is not charged." *State v. Billstrom*, 276 Minn. 174, 177, 149 N.W.2d 281, 284 (1967). The "overarching concern" is that the evidence will be used for an improper purpose, "such as suggesting that the defendant has a propensity to commit a crime." *State v. Washington*, 693 N.W.2d 195, 200 (Minn. 2005). Appellate courts have expressed a strong dislike for *Spreigl* evidence, *Link*, 289 N.W.2d at 105, and have encouraged trial courts to be "vigilant in observing the safeguards" provided in Minn. R. Evid. 404(b) to protect against "the risk of unfair prejudice." *State v. DeWald*, 464 N.W.2d 500, 505 (Minn. 1991). It is the trial court's obligation to "determine that there is

clear and convincing evidence" of a defendant's involvement in the crimes or other bad acts. *State v. Doughman*, 384 N.W.2d 450, 454 (Minn. 1986) (quotation omitted).

The Minnesota Supreme Court has stated:

> [T]he trial court has broad discretion in determining whether or not to require the state to call the *Spreigl* witnesses at the hearing to determine the admissibility of the *Spreigl* evidence. . . . It is our understanding that most trial judges generally use the offer of proof procedure at the *Spreigl* hearing. We see nothing wrong with this or any reason for requiring a mini-trial on the issue. The [c]ode of [p]rofessional [r]esponsibility helps to insure that prosecutors will not intentionally give an inaccurate statement of what the other-crime evidence will be, and *the trial court and the appellate courts are always free to grant relief, when appropriate, if the evidence adduced was not what the prosecutor led the trial court to expect*.

*State v. Kasper*, 409 N.W.2d 846, 847 (Minn. 1987) (emphasis added).

Here, the state's evidence at trial was "not what the prosecutor led the trial court to expect" at the *Spreigl* hearing. *Id.* Notably, Davis was not arrested, charged, or convicted of any crime related to the Lake Calhoun shooting. As part of the state's offer of proof at the pretrial *Spreigl* hearing, only Sergeant Wallerich testified. The sergeant testified that an eyewitness, N.P., identified Davis from a photo lineup "as a party that looked similar" to one of the Lake Calhoun shooters. The sergeant further testified that Davis confessed his involvement in the Lake Calhoun shooting to two witnesses and intimated his involvement to a third. Finally, the sergeant discussed cell-tower evidence placing Davis in the proximity of Lake Calhoun on the night of the shooting.

At trial, only N.P. and Sergeant Wallerich testified regarding the Lake Calhoun incident. N.P. testified that it was 10:00 p.m., the perpetrators came out from the bushes

behind her, she did not see their faces, and she got only a "glimpse" of them in passing. Additionally, N.P. acknowledged that, immediately following the Lake Calhoun incident, she did not believe she could identify the perpetrator. Two years later, she identified Davis from a photo lineup because she "recognized some facial features." *Cf. State v. Lindahl*, 309 N.W.2d 763, 766 (Minn. 1981) (noting eyewitness "positively identified defendant" after spending five to six hours with him, providing "a good opportunity to observe him"). Thus, N.P.'s identification of Davis as a Lake Calhoun shooter was not as strong as the prosecutor led the district court to believe through the sergeant's testimony at the *Spreigl* hearing.

Of the three witnesses to whom Davis allegedly confessed or intimated his involvement in the Lake Calhoun shooting, two of them never testified, and the third recanted. Instead, the state offered hearsay testimony through the sergeant that individuals affiliated with the 1-9 gang identified Davis as one of the Lake Calhoun shooters and that one witness provided corroborating, non-public information linking Davis to the Lake Calhoun crime. Finally, Sergeant Wallerich again testified about the cell-tower evidence. But the state did not offer the cell-phone records into evidence at the *Spreigl* hearing or at trial.

After he was found guilty, Davis moved for a new trial. Davis highlighted that the state's evidence at trial regarding the Lake Calhoun incident did not conform to its offer of proof at the *Spreigl* hearing. The district court agreed, "conced[ing] . . . that what was offered at trial was significantly less than the offer of proof." Nevertheless, the district court denied Davis's motion for a new trial, noting Davis's failure to object to the hearsay

statements offered by the state. *But see Riley v. State*, 819 N.W.2d 162, 169 (Minn. 2012) (rejecting testimony in affidavits as based on inadmissible hearsay).

At the very least, this case presents a close call, which requires that the evidence be excluded. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006) ("If the admission of evidence of other crimes or misconduct is a close call, it should be excluded."). The evidence consists only of an eyewitness's uncertain identification after getting a glimpse of the shooter at 10:00 p.m.; cell-tower evidence placing Davis in proximity to Lake Calhoun on the night in question; and out-of-court statements from biased, gang-affiliated witnesses with no opportunity for either the judge at the *Spreigl* hearing or the jury at trial to evaluate their credibility. *State v. Brown*, 739 N.W.2d 716, 720 (Minn. 2007) ("Inquiry on cross-examination into common gang membership may be sufficiently probative to show bias . . . ."). "Unlike other cases in which we have affirmed the trial court's admission of *Spreigl* evidence on the strength of a conviction, a victim's clear identification of the defendant as the assailant, or the defendant's own confession," *State v. Shannon*, 583 N.W.2d 579, 584 (Minn. 1998), in this case, it cannot be said that Davis's participation in the Lake Calhoun shooting is "highly probable." *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998) (quotation omitted), *holding modified by Ness*, 707 N.W.2d at 686. The state's evidence was not "unequivocal, intrinsically probable and credible, and free from frailties." *Gassler v. State*, 787 N.W.2d 575, 583 (Minn. 2010).

The state overstated the strength of its evidence connecting Davis to the Lake Calhoun shooting at the *Spreigl* hearing. Pursuant to *Kasper*, the district court and appellate courts have the authority "to grant relief, when appropriate, if the evidence

adduced was not what the prosecutor led the trial court to expect." 409 N.W.2d at 847. Therefore, I would conclude that the district court abused its discretion because the evidence of Davis's involvement in the Lake Calhoun shooting did not meet the clear-and-convincing standard. Minn. R. Evid. 404(b). The evidence connecting Davis to the Lake Calhoun crime is "simply too incomplete." *Link*, 289 N.W.2d at 106 (quotation omitted).

**II.     Because the evidence of Davis's involvement in the Lake Calhoun shooting was erroneously admitted and harmful, Davis is entitled to a new trial.**

In order to obtain a new trial, an appellant must show that the district court abused its discretion by admitting the *Spreigl* evidence and that its erroneous admission was harmful. *State v. Thao*, 875 N.W.2d 834, 839 (Minn. 2016). An error is harmful if there is a reasonable possibility that the "wrongfully admitted evidence significantly affected the verdict." *Id.* (quotation omitted). Factors to consider include whether a cautionary instruction was used, whether in closing arguments the state dwelled on the evidence, and whether there was overwhelming evidence of guilt. *Id.* As explained above, the admission of the *Spreigl* evidence was erroneous, so I next turn to the analysis of whether the erroneous admission was harmful.

First, the district court provided a cautionary instruction to the jury regarding the Lake Calhoun shooting. However, in its instructions, the district court charged the jury with determining whether Davis's participation in the Lake Calhoun shooting was clear and convincing. This was an abuse of discretion because it is the court's duty, not the jury's, to determine whether the *Spreigl* evidence meets the clear and convincing standard. *See Kasper*, 409 N.W.2d at 847.

Second, the record reflects that the state dwelled on the wrongfully admitted evidence in its closing arguments. The state made seven different references to the Lake Calhoun shooting. *Cf. Thao*, 875 N.W.2d at 840 (noting that the prosecutor did not dwell on prior incident by alluding to it only twice). Notably, with respect to N.P.'s testimony identifying Davis as the alleged shooter, the state acknowledged that "[m]aybe she wasn't positive." The state also highlighted that the 2010 shooting was a crime "that the defendant [has not] been charged with yet," implying that charges for the crime were pending. Moreover, the state went even further by stating to the jury, "Whatever you do, I'm sure I'll see Mr. Davis again." I agree with the majority that this statement was plain error by the state and the "implied premise is [that] . . . even without a conviction, Davis is such a habitual offender that he will likely offend again." This is precisely the danger of admitting *Spreigl* evidence, that it will be used "for an improper purpose, such as suggesting that the defendant has the propensity to commit a crime." *Washington*, 693 N.W.2d at 200.

Third, the state's evidence against Davis in the Target Field shooting, particularly with respect to the identification of Davis as the shooter, was weak. The Target Field victim identified Davis as the shooter in a recorded interview to the police. Yet, prior to the interview, the victim stated that he would be unable to identify the shooter. Then, at trial, he recanted his identification of Davis as the shooter. A second biased witness implicated Davis by testifying that, following the Target Field shooting, Davis insinuated his participation in the crime. But this second witness was originally charged as a co-defendant in the Target Field shooting and initially gave two false statements to the police.

And once he came forward and implicated Davis in the crime, the charges against him were dropped.

In view of the district court's erroneous instruction to the jury, the state's dwelling on the wrongfully admitted *Spreigl* evidence during closing arguments, and the limited evidence of Davis's guilt in the Target Field shooting, I cannot conclude that the erroneous admission of the *Spreigl* evidence did not substantially influence the jury's decision. *Thao*, 875 N.W.2d at 839. I acknowledge the challenge the state faces in prosecuting gang-related cases. I am also cognizant of the significant negative impact that gang-related violence has on the community and the desirability of obtaining convictions. But trial courts and appellate courts have an obligation to ensure that the legal standard of clear and convincing evidence is met for the proper admission of *Spreigl* evidence and, as the Minnesota Supreme Court has noted, the courts "are always free to grant relief, when appropriate" when the state's offer of proof is not supported by the evidence adduced at trial and fails to meet the clear-and-convincing standard. *Kasper*, 409 N.W.2d at 847. Here, after trial, the district court "concede[d] . . . that what was offered at trial was significantly less than the offer of proof" and did not meet this standard. As such, I would reverse and remand for a new trial.